**Wilhelm REICH et al., Defendants, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 5160.

United States Court of Appeals First Circuit.

Heard Nov. 5, 1956.

Decided Dec. 11, 1956.

Writ of Certiorari Denied Feb. 25, 1957.

See 77 S.Ct. 563.

Wilhelm Reich pro se.

Michael Silvert pro se.

Charles Haydon, New York City, for Wilhelm Reich Foundation, appellant.

Joseph L. Maguire, Atty., Dept. of Health, Education and Welfare, Washington, D. C., with whom Peter Mills, U. S. Atty., Portland, Maine, and Warren E. Whyte, Atty., Dept. of Health, Education and Welfare, Washington, D. C., were on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

The United States, on February 10, 1954, filed a complaint under § 302(a) of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1043, 21 U.S.C.A. § 332(a), in the United States District Court for the District of Maine asking for an injunction restraining the Wilhelm Reich Foundation, a Maine corporation, and Wilhelm Reich and Ilse Ollendorff, individuals residing in Rangeley, Maine, from violating § 301(a) and (k) of the above Act, 21 U.S.C.A. § 331(a, k), by either introducing, or causing the in-

troduction into interstate commerce, or, while being held for sale after shipment in interstate commerce doing anything resulting in the misbranding of, certain devices known as "orgone energy accumulators,"[1] which it was alleged were adulterated within the meaning of § 501 (c) of the Act, 21 U.S.C.A. § 351(c) and misbranded within the meaning of § 502 (a) thereof. 21 U.S.C.A. § 352(a). Service of the complaint and summons was duly made on the defendants on the same day that the complaint was filed.

The defendants entered no appearances and filed no answers. Indeed, in a letter to the judge of the court below dated February 25, 1954, the defendant, Dr. Wilhelm Reich, indicated unmistakably that he, at least, had no intention of filing either an appearance or an answer. Dr. Reich wrote to the court in part:

"My factual position in the case as well as the world of science of today does not permit me to enter the case against the Food and Drug Administration, since such action would, in my mind, imply admission of the authority of this special branch of the government to pass judgment on primordial, pre-atomic cosmic orgone energy."

On the day after this letter was written requests for admissions were propounded by the United States and served on each of the defendants. These requests were ignored, and on March 19, 1954, upon request of the United States, the default of each defendant was entered by the clerk of the court below. On the same day the United States moved for default judgment, its motion was granted, and the court immediately entered a decree of injunction as prayed for in the complaint. By the terms of this injunction the named defendants, and "each and all of their officers, agents, servants, employees, * * * and all persons in active concert or participation with them or any of them" were "perpetually enjoined and restrained" from indulging in the practices set out in detail in the complaint. Furthermore all orgone energy accumulators out on a rental basis or otherwise owned or controlled by the defendants were ordered recalled to the defendants' place of business in Rangeley, Maine, and there either destroyed or dismantled for salvage under the supervision of employees of the Food and Drug Administration, and in addition all printed labels and order blanks for orgone energy accumulators, and certain listed descriptive literature pertaining thereto, were ordered destroyed.

Certified copies of the decree of injunction were served on the named defendants on March 22, 1954, and at the same time copies were either served or mailed to several other persons in the Rangeley area who were either employees of or contractors for the defendants in the manufacture and distribution of the devices. At the same time copies of the decree were also mailed to a number of duly licensed physicians in the New York, New Jersey, and Philadelphia area, most of whom specialized in psychiatry, who were known to have used orgone energy accumulators in the treatment of their patients. Included in this group was the appellant herein, Dr. Michael Silvert.

On March 30, 1954, the defendant Ilse Ollendorff as clerk of the corporate defendant sent a telegram to the United States Attorney for the District of Maine stating:

"The Wilhelm Reich Foundation is far advanced in preparing full compliance with injunction of March 19, 1954 Stop An exact account of measures taken and still in progress will be sent to your office for your information."

---

1. In their commonest form these are box-like structures in which the patient sits for treatment. It is asserted by the Government that these devices were being falsely held out to the public at large by the defendants as at least beneficial in the treatment of a great number of human ills ranging from cancer to the common cold.

No further account of measures taken to comply with the injunction was ever sent to the District Attorney, nor does it appear that in fact any such measures ever were undertaken.

Next, on May 5, 1954, the doctors in the New York-Philadelphia area referred to above, including as we have already noted the appellant Dr. Michael Silvert, applied to the court below for leave to intervene. Their application was denied on November 17, 1954, in accordance with an opinion of the court below of that date reported in 17 F.R.D. at 96. This court affirmed on that opinion sub nom Baker v. United States, 1955, 221 F.2d 957.

We turn now to the case before us which was initiated by the United States Attorney for the District of Maine on July 15, 1955, when, acting under § 302 (b) of the Act, he filed in the court below an information charging the Wilhelm Reich Foundation, Dr. Wilhelm Reich and Dr. Michael Silvert with failing and refusing to obey the injunction of March 19, 1954, and asking for an order to show cause why they should not be adjudged in criminal contempt for their misbehavior. The defendants appeared and filed motions to dismiss, which were denied; the United States moved to amend, its motion was allowed, and the defendants again moved to dismiss and their motions were again denied. They also filed several other motions, all of which were denied, and do not require description or discussion. It will suffice to say that the defendants were given full opportunity for hearing on every occasion.

Eventually, on May 3, 1956, the defendants, in accordance with their request, were put to trial by jury on their pleas of not guilty. They were found guilty by the jury and thereafter sentenced by the court, the corporation to a fine and the individuals to terms of imprisonment. These appeals are from the respective judgments of sentence.

The defendants did not contend below and do not urge here that the injunction of March 19, 1954, had in fact been obeyed. On the contrary, they admitted at the trial that no attempt had been made to comply with its terms. Their contention is that the court below had no jurisdiction to issue the injunction. The individual appellants say that they, both individually and acting through the corporate defendant, of which Dr. Reich was the moving and guiding spirit, were engaged in basic scientific research which no agency of the Government had jurisdiction to interfere with or control, and that furthermore and more specifically, the court below had no jurisdiction to issue the injunction for the reason that it had been procured by fraud and deception practiced upon the court by officers and agents of the Food and Drug Administration. In addition Dr. Silvert contends that he is not bound by the injunction because he was not a defendant in the original suit in which it was issued and had not been served with process therein.

None of these contentions have any merit.

■■ We turn first to Dr. Silvert's separate contention. It has been settled law for a long time that one who knowingly aids, abets, assists, or acts in active concert with, a person who has been enjoined in violating an injunction subjects himself to civil as well as criminal proceedings for contempt even though he was not named or served with process in the suit in which the injunction was issued or even served with a copy of the injunction. In re Lennon, 1897, 166 U.S. 548, 554, 17 S.Ct. 658, 41 L.Ed. 1110; Alemite Mfg. Corp. v. Staff, 2 Cir., 1930, 42 F.2d 832 and cases cited. See also Rule 65(d), Fed.Rules Civ.Proc. 28 U.S. C.A. The question then is whether Dr. Silvert had actual knowledge of the injunction of March 19, 1954, issued against the Wilhelm Reich Foundation, and Dr. Wilhelm Reich and Ilse Ollendorff personally. There can be no doubt that he did. He was mailed a copy of that injunction when it was issued, he admitted at the trial that he read the injunction when he received it, and moreover he was one of those who moved

to intervene in the suit in which it was issued. Thus it is abundantly clear that he knew of its existence and knew its terms.

■ ■ The appellants' first jurisdictional contention does not deserve much comment or discussion. Its refutation is obvious from its mere statement. Of course the United States Government has power to forbid and power to take appropriate steps to prevent the transportation in interstate commerce of devices of alleged therapeutic value if they are adulterated or misbranded.

■ The appellants' second jurisdictional contention deserves only slightly more extended consideration. There can be no doubt whatever that Congress in § 302(a) of the Federal Food, Drug, and Cosmetic Act gave the District Court jurisdiction over the subject matter of the original suit. Nor can there be any doubt that the District Court obtained personal jurisdiction over the defendants in that suit by legal service of process upon them in Maine. This jurisdiction, once obtained, certainly would not be terminated by any fraud practiced upon the court by the successful litigant. On the contrary, the Court's jurisdiction would necessarily have to continue in order to permit the court to entertain an application by the victims of a successful litigant's fraud to vacate the injunction through the remedies and procedures for relief outlined in detail in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 1944, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250.

■ And the remedies and procedures available to a defrauded litigant certainly do not include refusal to obey an injunction. It is too well settled to require a lengthy citation of cases that an injunction, temporary or permanent, must be obeyed as long as it is in force and effect. Howat v. State of Kansas, 1922, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550; United States v. United Mine Workers of America, 1947, 330 U.S. 258, 289, et seq., 67 S.Ct. 677, 91 L.Ed. 884

and cases cited. Nor is this rule a mere technical quirk of procedure, for as the Supreme Court pointed out in Gompers v. Buck's Stove & Range Co., 1911, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797:

> "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."

See also the remarks made by Mr. Justice Frankfurter at the bottom of page 311 and the top of page 312 of his concurring opinion in 330 U.S. in the United Mine Workers case, 67 S.Ct. at pages 704, 705, supra.

■ It follows that the court below did not err in refusing to permit the defendants at their trial for contempt to show in their defense that officers and agents of the Food and Drug Administration had procured the injunction of March 19, 1954, by fraud perpetrated upon the court.

■ Although the court's refusal to permit the defendants to show fraud in procuring the injunction is the only error asserted by them to have occurred at their trial, we have nevertheless, because the defendants were not represented by counsel in the court below and only partially on appeal, examined the record with particular care. We find ample evidence that Dr. Reich and the Wilhelm Reich Foundation deliberately refused to obey the injunction and that Dr. Silvert aided and abetted them in flouting it. Nor do we find any erroneous rulings of law. Indeed, it is evident from the record that throughout the trial the presiding judge solicitously protected the appellants' rights and gave them full opportunity to present every defense available to them under the law.

Judgment will be entered affirming the judgments of the District Court.