**In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.**

**Robert C. RICHARDS, Edward Kaufman, and Martin Rochman, Appellants,**

**v.**

**PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE and Official Committee of Equity Security Holders, Appellees,**

**and**

**State of New Hampshire, Intervenor–Appellee.**

**In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.**

**Robert C. RICHARDS and John B. Mascioni, Appellants,**

**v.**

**PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE and Official Committee of Equity Security Holders, Appellees.**

Civ. A. No. 93–0209–T.

United States District Court, D. Rhode Island.

March 23, 1994.

---

320

John B. Nolan, Day, Berry & Howard, Hartford, CT, for Public Service Co. of New Hampshire.

Robert C. Richards, East Hampton, NY, for Robert C. Richards.

Robert C. Richards, New York City, for Edward Kaufman, Martin Rochman and John B. Mascioni.

Howard Berman, Whitman & Ransom, New York City, for Official Committee of Equity Sec. Holders.

Frederick J. Coolbroth, Devin, Millimet & Branch, Manchester, NH, for State of N.H.

### MEMORANDUM AND ORDER

TORRES, District Judge.

These cases are before the Court for consideration of appeals from two orders of the Bankruptcy Court.[1] The first order, dated November 3, 1992, enjoined appellants Richards, Kaufman, and Rochman from suing the appellees for their activities in obtaining approval of a Plan of Reorganization for Public Service Company of New Hampshire ("PSNH"). The second order, dated January 22, 1993, adjudged appellants Richards and Mascioni in contempt for violating the first

---

**1.** Both cases emanate from the District of New Hampshire, and the consolidated appeals were referred to this Court when the New Hampshire district judges recused themselves.

order by commencing a class action suit against appellees in the United States District Court for the Southern District of New York. For the reasons hereinafter stated, both appeals are denied and the orders of the Bankruptcy Court are affirmed.

## FACTS

In January, 1988, Richards, Kaufman, and Rochman were shareholders of PSNH. At that time, PSNH was New Hampshire's largest public utility and the principal owner of a nuclear power facility being constructed at Seabrook, New Hampshire. Because the State of New Hampshire did not allow the cost of constructing a nuclear power plant to be included in utility rates until the nuclear plant was brought on line, PSNH was required to borrow heavily in order to proceed with the Seabrook project. When delays were encountered in obtaining regulatory approvals, mounting interest expenses and escalating construction costs caused PSNH to seek protection under Chapter 11 of the Bankruptcy Act.

In late 1989, Northeast Utilities Service Corporation ("NUSCO"), PSNH and others submitted a Plan of Reorganization (the "Plan"). One of the key elements of that Plan was a proposed rate agreement (the "Rate Agreement") between PSNH and the State of New Hampshire. By its terms, the Plan did not become effective unless and until the New Hampshire Public Utilities Commission ("NHPUC") approved the Rate Agreement. The Plan also provided for the eventual merger of PSNH into Northeast Utilities ("Northeast"), and the purchase of PSNH's common stock for $20 per share. That aspect of the Plan was contingent upon approval of the merger by the Federal Energy Regulatory Commission ("FERC").

In accordance with 11 U.S.C. § 1125, solicitations for acceptance of the Plan were accompanied by a disclosure statement containing information relating to the Plan. Although Richards and Rochman challenged the adequacy of the disclosure statement, it was approved by the Bankruptcy Court as "contain[ing] adequate information within the meaning of § 1125." The order approving the disclosure statement was never appealed.

On April 20, 1990, after six days of hearings, the Bankruptcy Court confirmed the Plan over the appellants' objection. The Bankruptcy Court specifically found that the Plan had been proposed "in good faith" and that the Rate Agreement provided for a rate increase that was "fair and equitable." The appellants appealed the Confirmation Order to the District Court and filed motions in both the Bankruptcy Court and the District Court for a stay of the order pending resolution of the appeal. Those motions were denied. Neither denial was appealed, and the appellants took no further action to stay implementation of the plan.

However, in January, 1991, the appellants asked the Bankruptcy Court to revoke the Confirmation Order, claiming that it had been obtained by fraud because the Disclosure Statement misrepresented the true value of the merger. That request was dismissed on the ground that it had not been filed within 180 days after entry of the Confirmation Order as required by 11 U.S.C. § 1144. The order of dismissal was not appealed.

On August 22, 1991, the District Court affirmed the Confirmation Order. *In re Public Service Co. of New Hampshire*, No. 90–272–D, slip op. (D.N.H. Aug. 21, 1991). Richards, Kaufman and Rochman appealed from the District Court's judgment contending that the Plan was not in the best interests of common stockholders because the proposed Rate Agreement provided a lesser return than would have been obtained from a litigated rate case. The First Circuit dismissed that appeal as moot, noting that the Plan of Reorganization had been implemented on May 17, 1991, and finding that the appellants had failed to diligently seek a stay of the Confirmation Order. *In re Public Service Co.*, 963 F.2d 469 (1st Cir.1992), *cert. denied sub nom. Rochman v. Northeast Utilities Service Co.*, —— U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992).

Shortly thereafter, Richards informed the appellees that he intended to initiate a class action against them in the United States District Court for the Southern District of New York for misrepresentation and securi-

ties laws violations based on their solicitation of approval of the Plan. Specifically, the draft complaint provided by Richards alleged that the disclosure statement: (1) falsely implied that NHPUC had essentially unlimited discretion to set rates regardless of the impact on PSNH and its stockholders; (2) misrepresented the value that the common stockholders would receive if the merger was not implemented; and (3) misrepresented the value of the merger to the ratepayers of PSNH and to the stockholders and ratepayers of Northeast Utilities.

In response, the appellees filed an adversary complaint in the Bankruptcy Court seeking a declaration that the "safe harbor" provisions of § 1125(e) protected them from liability for the alleged securities laws violations and further seeking an injunction against the threatened suit. The Bankruptcy Court held that the proposed class action suit was barred by § 1125(e) and the doctrine of *res judicata.* *In re Public Service Co.,* 148 B.R. 702, 720 (Bankr.D.N.H.1992). More specifically, the Bankruptcy Court noted that it had approved the disclosure statement and had found that, in soliciting acceptance of the Plan, the appellants acted in "good faith" and in accordance with the applicable provisions of the Bankruptcy Code. The Bankruptcy Court also enjoined Richards, Kaufman and Rochman "and their attorneys, agents, heirs, assigns or representatives" from commencing any civil action against the appellees to challenge the adequacy of the disclosure statement, the Confirmation Order or the solicitation of acceptance of the Plan.

Despite that order, Richards, purportedly acting as attorney for John G. Mascioni and all other PSNH common stockholders except Richards, Kaufman and Rochman, commenced the previously threatened class action lawsuit. The appellants then moved to have Richards and Mascioni adjudged in contempt. After an evidentiary hearing, the Bankruptcy Court found that Mascioni had acted with notice of the injunction and at Richards' behest. Accordingly, the Bankruptcy Court entered an order adjudging both of them in civil contempt. No sanctions were imposed, but Richards and Mascioni were ordered to dismiss the class action complaint without prejudice to its refiling if the Bankruptcy Court's injunction is overturned.

Richards, Kaufman and Rochman have appealed from the declaratory judgment and the order enjoining them from suing the appellees. In addition, Richards and Mascioni have appealed from the order adjudging them in contempt. Those appeals have been consolidated and are now before this Court.

### STANDARD OF REVIEW

In reviewing a decision of a bankruptcy court, the District Court must accept the bankruptcy judge's findings of fact unless they are clearly erroneous. Fed.Bankr.R. 8013; Fed.R.Civ.P. 52(a); *In re Bible Speaks,* 869 F.2d 628, 629 (1st Cir.), *cert. denied,* 493 U.S. 816, 110 S.Ct. 67, 107 L.Ed.2d 34 (1989); *Briden v. Foley,* 776 F.2d 379, 381 (1st Cir.1985). A bankruptcy court's conclusions of law, on the other hand, are subject to *de novo* review. *In re G.S.F. Corp.,* 938 F.2d 1467, 1474 (1st Cir.1991); *Truck Drivers Local 807 v. Carey Transportation, Inc.,* 816 F.2d 82, 88 (2d Cir.1987).

A finding of fact by a bankruptcy court is said to be "clearly erroneous" only when the reviewing court is left with the definite and firm conviction that a mistake was made. *D. Federico Co. v. New Bedford Redevelopment Auth.,* 723 F.2d 122, 126 (1st Cir.1983) (quoting *Burgess v. M/V Tamano,* 564 F.2d 964, 977 (1st Cir.1977)); *see also In re Roco Corp.,* 64 B.R. 499, 500 (D.R.I.1986) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

### DISCUSSION

I. *The Injunction*

A. *11 U.S.C. § 1125(e)*

As already noted, the Bankruptcy Court enjoined Richards, Kaufman and Rochman from suing the appellees on the ground that such suit was barred by the "safe harbor" provisions of § 1125(e) of the Bankruptcy Code. That section states:

A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of

[Chapter 11], or that participates, in good faith and in compliance with the applicable provisions of [Chapter 11], in the offer, issuance, sale, or purchase of a security, offered or sold under [a reorganization plan] ... is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities.

11 U.S.C. § 1125(e).

The appellants argue that § 1125(e) does not bar their class action suit because it shields only those acting in "good faith," whereas the proposed class action complaint alleges that the appellees made intentional misrepresentations in their disclosure statement (*i.e.*, that they did not act in good faith). That argument ignores both the purpose of § 1125(e) and the findings made by the Bankruptcy Court.

Congress' intent in enacting § 1125(e) was "to protect creditors, creditors' committees, counsel for committees, and others involved in the case from potential liability under the securities laws for soliciting acceptances of a plan by use of an approved disclosure statement." H.R.Rep. No. 595, 95th Cong., 1st Sess. 229–231 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6189; *Yell Forestry Products, Inc. v. First State Bank*, 853 F.2d 582, 584 (8th Cir.1988). In this case, the Bankruptcy Court expressly found not only that the disclosure statement was adequate but also that the appellees acted in good faith when they solicited approval of the Plan. General Findings of Fact and Conclusions of Law Re Plan Confirmation Issues, ¶ 47; Confirmation Order at 3. There is nothing in the record even suggesting that those findings are clearly erroneous. Under such circumstances, allowing the proponents of the Plan to be sued for alleged securities laws violations merely because they are alleged to have acted intentionally would be diametrically opposed to the purpose of § 1125(e).

■ Moreover, as already noted, the appellants failed to appeal the order approving the disclosure statement. Subjecting a bankruptcy court's findings to subsequent collateral attack in another forum would undermine the efficacy of reorganization plans and "would run counter to the important policy favoring finality in bankruptcy proceedings." *See In re Public Service Co.*, 963 F.2d at 474. Exposing persons determined by the bankruptcy court to have solicited acceptance of plans in good faith and by means of adequate disclosure statements to civil suits alleging misrepresentation would have a palpably chilling effect on the reorganization process. The cost of defending such suits and the magnitude of the potential liability would deter all but the most stouthearted from soliciting acceptance of reorganization plans.

■ It is true that a finding of good faith by the bankruptcy court at the time of confirmation may not necessarily bar any subsequent judicial inquiry on the subject. Under Section 1144, an interested party alleging fraud may petition the Bankruptcy Court to revoke confirmation of a plan. That section states:

On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.

11 U.S.C. § 1144.

In this case, the appellants did file a revocation petition but not until after expiration of the 180 day period prescribed by § 1144. In their petition, the appellants acknowledged that they had "recognized for some time that there was an inconsistency between the Disclosure Statement and the evidence presented by NU to the NHPUC." However, they asserted that they did not comprehend the significance of the alleged inconsistency until more than 180 days after the Confirmation Order when the ALJ's decision approving the merger was issued. Thus, the appellants averred that "not until we reviewed the ALJ's Initial Decision on the merger did we recognize that the misrepresentation of the value of the merger, for all the reasons set forth herein, was instrumental in procuring confirmation of the Plan." Request at 17.

As already noted, the Bankruptcy Court dismissed the revocation petition as untimely. The appellants attempt to, now, challenge that determination must fail for two reasons.

First, although the Bankruptcy Court made no express finding on the subject, it seems clear that all of the facts constituting the alleged fraud were known to the appellants during the 180 day period. The appellants are unable to point to any "new facts" contained in the ALJ's decision supporting the claim of fraud. The allegation that the appellants did not "recognize" the significance of the alleged misrepresentations until later is insufficient to excuse their tardiness.

■ Even more important is the fact that the appellants failed to appeal the order dismissing their petition as untimely. Because of that failure, the appellants are bound by the Bankruptcy Court's determination. *Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1164 (1st Cir.1991) (an order dismissing an action as time barred is considered a final judgment on the merits for *res judicata* purposes).

### B. *Res Judicata and Collateral Estoppel*

■ The appellants also argue that § 1125(e) does not bar their class action suit because they are not bound by the Bankruptcy Court's finding that the appellees acted in good faith. That argument is inconsistent with established principles of claim and issue preclusion.

■ The doctrine of res judicata or claim preclusion bars a party from litigating a claim that such party raised or could have raised " 'in respect to the subject matter of ... prior litigation.' " *In re Belmont Realty Corp.*, 11 F.3d 1092, 1097 (1993) (1st Cir. 1993) (quoting *Dennis v. R.I. Hospital Trust Nat. Bank*, 744 F.2d 893, 898 (1st Cir.1984)); *DeCosta v. Viacom Int'l, Inc.*, 758 F.Supp. 807, 812 (D.R.I.1991); *rev'd on other grounds*, 981 F.2d 602 (1st Cir.1992). Collateral estoppel or issue preclusion "prohibits relitigation 'of any factual or legal issue that was actually decided in previous litigation between the parties, whether on the same or on a different claim.' " *In re Belmont*, 11 F.3d at 1097 (quoting *Dennis* 744 F.2d at 898); *see DeCosta v. Viacom Int'l Inc.*, 758

F.Supp. at 812. Each is designed to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *DeCosta v. Viacom Int'l Inc.*, 758 F.Supp. at 811. In this case, the appellants' argument runs afoul of both doctrines.

■ Since the prior judgment in this case was rendered by a federal court acting under jurisdiction conferred by federal law, its preclusive effect is governed by federal law standards. *Kale v. Combined Insurance Co.*, 924 F.2d at 1164. Under federal law, the doctrine of issue preclusion bars a party from relitigating an issue if:

1. the party had a "full and fair opportunity to litigate" the issue in an earlier action, and

2. the issue was finally decided in that action, and

3. the issue was decided against that party, and

4. determination of the issue was essential to the earlier judgment.

*DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir.1992).

Claim preclusion, on the other hand, occurs when:

1. there was a prior suit involving the same parties or their privies; and

2. the cause of action in both suits is the same; and

3. the prior suit resulted in a final judgment on the merits.

*Kale v. Combined Insurance Co.*, 924 F.2d at 1165. Unlike issue preclusion, claim preclusion bars relitigation of claims that *could have* been asserted in the prior proceeding as well as those that *actually* were asserted. *Id.* at 1164.

■ Principles of claim preclusion and issue preclusion apply to bankruptcy proceedings as well as other kinds of litigation. *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966). Furthermore, § 1141(a) of the Bankruptcy Code specifically provides that the terms of a con-

firmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner of the debtor, regardless of whether their claims or interests are impaired or whether they have accepted the plan. 11 U.S.C. § 1141(a).

In this case, all of the appellants were stockholders of PSNH and either they or those in privity with them actively participated in the confirmation and revocation proceedings. Furthermore, the claim that the appellants seeks to assert in the class action suit is the same claim they litigated or could have litigated in the bankruptcy proceedings because it grows out of the same transaction or series of connected transactions or the same nucleus of operative facts from which their bankruptcy claim arose, namely, the appellees' conduct in soliciting acceptance of the Plan. *See, Kale v. Combined Insurance Co.*, 924 F.2d at 1166 (test for determining identity of claims for purposes of claim preclusion is a transactional test). Indeed, the central issue in each case is the same. It is whether the appellees made misrepresentations in their disclosure statement. That issue was litigated in and decided by the Bankruptcy Court which found that the Disclosure Statement was adequate and that the appellees acted in good faith in soliciting acceptance of the Plan.[2]

■ Nor can there be any question that the Bankruptcy Court's determination constitutes a final judgment for purposes of both claim preclusion and issue preclusion. It is settled law that an order confirming a plan of reorganization constitutes a judgment. *See, Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir.1992). Here, the order confirming the Plan was affirmed on appeal. Therefore, that order is a final judgment for preclusion purposes. In addition, the Bankruptcy Court's dismissal of the petition to revoke the Confirmation Order also operates as a final judgment inasmuch as it never was appealed. *Kale v. Combined Ins. Co.*, 924

F.2d at 1164 (an order dismissing an action as being time barred is considered a final judgment on the merits for *res judicata* purposes).

■ The appellants argue that because their appeal from the Confirmation Order was dismissed as moot, the Order has no preclusive effect. They rely on the *Restatement (Second) of Judgments*, which states:

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

(1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action.

Restatement (Second) of Judgments § 28.

However, as the Bankruptcy Court observed, appellants' reliance on the Restatement is "misplaced" because the appellants were not prevented from obtaining review of the Confirmation Order "as a matter of law." *See In re Public Service Co. of New Hampshire*, 148 B.R. at 710. Rather, review on the merits was foreclosed, in part, by what the First Circuit characterized as the appellants' unexcused failure to seek a stay before the Plan was implemented. *In re Public Service Co.*, 963 F.2d at 473.

The appellants also rely on *Gelpi v. Tugwell*, 123 F.2d 377 (1st Cir.1941), where the First Circuit stated that a prior judgment has no *res judicata* effect if appellate review is foreclosed by intervening events that render the judgment moot as long as the appellant is not at fault. Once again, that reliance is misplaced for the same reason. Here, as already noted, the First Circuit explicitly found that appellants were "at fault" by failing to seek a stay of the Confirmation Order which "allowed performance under the PSNH reorganization plan to proceed to a point well beyond any practicable appellate

---

**2.** Even the appellants concede that they actually "litigated their allegations with regard to the representations of the powers of the NHPUC

before [the Bankruptcy Judge] and he determined that they were accurate." Appellants' Brief, at 32.

annulment." *In re Public Service Co.*, 963 F.2d at 473. As the Court stated:

> In sum, whether through oversight or 'procedural ineptitude,' *see In re Roberts Farms*, 652 F.2d [793] at 795 [ (9th Cir. 1981) ] ("procedural ineptitude" in seeking stay no excuse); ... appellants failed to "pursue with diligence all available remedies to obtain a stay of execution of the objectionable order," *In re Roberts Farms*, 652 F.2d at 798.

*Id.* at 469.

In short the Bankruptcy Court correctly determined that the appellants' proposed class action suit is barred by § 1125(e) and principles of claim and issue preclusion. Consequently, their appeal from the declaratory judgment and the order enjoining them from proceeding with that suit is without merit.

## II. *The Contempt Order*

█ The injunction issued by the Bankruptcy Court clearly prohibited Richards and his agents from commencing any civil action against the appellees challenging the adequacy of the Disclosure Statement, the Confirmation Order, or the solicitation of acceptance of the Plan. It is undisputed that Richards willfully filed the class action suit and that it alleges fraud and misrepresentation by the appellees in the Disclosure Statement and in their actions soliciting acceptance of the Plan. Thus, Richards' conduct was plainly contumacious.[3] *Devine v. Rhode Island*, 827 F.Supp. 852, 863 (D.R.I.1993) (quoting *Palimigiano v. DiPrete*, 700 F.Supp. 1180, 1191 (D.R.I.1988)) ("To establish civil contempt, a complaint must show by clear and convincing evidence that a specific order of the Court has been violated.").

█ Mascioni contends that he cannot be punished for contempt because the injunction did not name him and because the Bankruptcy Court erred in finding that he acted in concert with Richards. Alternatively, he argues that he is not barred from collaterally attacking the adequacy of the Disclosure Statement because he was not a party in the bankruptcy proceedings and, therefore, is not bound by the Bankruptcy Court's determinations. This Court finds no merit in either argument.

█ Under Fed.R.Civ.P. 65(d), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 7065, an injunction is binding upon "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." A nonparty may be held in civil contempt for violating the terms of an injunction if "the nonparty participated in the contumacious act of a party or ... the nonparty was subject to the injunction because legally identified with a party." *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 35 (1st Cir.1980). Knowingly aiding or abetting a party in violating an injunction is sufficient participation to subject a nonparty to sanctions. *NBA Properties, Inc. v. Gold*, 895 F.2d 30, 33 (1st Cir.1990); *see Reich v. United States*, 239 F.2d 134 (1st Cir.1956) ("It has been settled law for a long time that one who knowingly aids, abets, assists, or acts in active concert with a person who has been enjoined in violating an injunction subjects himself to civil ... proceedings for contempt....").

In this case, there is ample evidence that Mascioni knew of the injunction. The class action complaint in which Mascioni was the named plaintiff recites the fact that the other appellants had been enjoined from bringing such a suit. Moreover, during his deposition, Mascioni admitted that he had read the injunction and discussed it with Richards. Complaint, S.D.N.Y. action at ¶ 19; Deposition of John Mascioni, at 34.

Despite that knowledge, Mascioni agreed to serve as Richards' alter ego by allowing the suit to be brought in his name. His role as a proxy for Richards is underscored by the understanding that he would not be required "to do anything" or to pay any attorneys' fees to Richards for prosecuting the

---

**3.** Appellants have withdrawn their challenges to the Bankruptcy Court's subject matter jurisdiction and its exercise of that jurisdiction in the underlying adversary proceeding. *See* Appellants' Reply Brief at 1.

case. Deposition of John Mascioni, at 55, 38, 45 and 46. Furthermore, Mascioni concedes that he and Richards "acted in concert in the preparation of the [class action] complaint." Appellants' Brief at 7.

Mascioni's argument that he is not bound by the Bankruptcy Court's determinations fails because it is inapposite with respect to the contempt issue. For contempt purposes, it is immaterial whether a nonparty who aids and abets a party in violating an injunction is, himself, bound by the factual or legal determinations made in the action pursuant to which the injunction is issued. Rather, the pertinent inquiry is whether the nonparty knowingly played a material role in violating it. *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d at 35. As already noted, in Mascioni's case the answer to that question is yes.

## CONCLUSION

For all of the foregoing reasons, the appeals from the Bankruptcy Court's Judgment dated November 3, 1992, and from the Bankruptcy Court's Contempt Order dated January 22, 1993, are denied, and the Judgment and Order appealed from are affirmed. IT IS SO ORDERED.