358 A.2d 32.

GOODBODY & CO., INC. *vs.* ANGELO PARENTE.

MAY 27, 1976.

PRESENT: Paolino, Acting C. J., Joslin, Kelleher and Doris, JJ.

438

JOSLIN, J. This civil action for damages stems from the defendant's refusal to surrender to his stockbroker, Goodbody & Co. (Goodbody),[1] 700 shares of the common stock of First Mortgage Investors (FMI). After a Superior Court jury returned a verdict for the defendant, the trial justice granted Goodbody's motion for a directed verdict on which decision had been reserved, and judgment was then entered for it in the amount of $21,154. The defendant appealed, and the only issue is whether the trial justice erred in directing a verdict.

The essential facts are not in dispute. The defendant was a longtime investor in the stock market, who relied primarily upon his broker, rather than upon his own inadequate records, for information concerning his account. During most of the time material hereto, Goodbody was his stockbroker. In 1968 and early 1969 he made several purchases of FMI stock and by February of 1969 he had become the owner of 1,552 shares. Starting in May of that year, and continuing for the next 15 months, his monthly statements from Goodbody indicated that he

---

[1] Goodbody & Co., a partnership, went out of business in December 1970. Its successor in interest is Goodbody & Co., Inc., the plaintiff in this case, which at the time of the trial was still operating for the purpose of reaching agreements with the partnership's debtors and creditors.

owned an additional 700 shares. Assuming that those statements were correct, defendant directed Goodbody to deliver 1,700 of those shares to the Industrial National Bank (Industrial) as collateral for his loan account at that institution, gifted 200 shares to his children and took possession in his own name of the remaining 352 shares.

The present difficulties started in August 1970 when the overcredit of 700 shares, until then unbeknown to either party, was first discovered by Goodbody. Demand was made on defendant for an immediate surrender of the 700 excess shares and for payment of the dividends he had received thereon during the preceding 16 months. Neither demand was met. The defendant did, however, request Industrial to release 700 of the 1,700 FMI shares pledged with it on his collateral loan account, but it refused to do so unless he substituted equivalent collateral. The defendant reported this to Goodbody and advised that his current financial condition neither permitted such a pledge nor any other immediate adjustment of the overcredit of his account. As possible alternatives he asked for time "to work it out" and when that was refused he suggested that Goodbody lend him sufficient funds to obtain a release of 700 FMI shares from Industrial. The situation was unchanged on January 22, 1971, when this litigation was commenced and still remains the same.

The theory upon which plaintiff tried this case was that defendant's refusal to surrender the excess shares constituted a conversion and entitled it to recover the value of the securities.[2] The primary defense was that defendant's

---

[2]Customarily the measure of damages in conversion is the fair market value of the property at the time of the conversion. *Jeffrey* v. *American Screw Co.,* 98 R. I. 286, 291, 201 A.2d 146, 150 (1964). When the property converted is of fluctuating value, however, damages may be measured differently. *See* 1 Harper & James, *Torts* §2.38 (1956). Neither party here has argued that the damages, assuming they should have been awarded, were incorrectly assessed and we do not do so sua sponte.

refusal was privileged under the doctrine of qualified refusal. In determining whether the circumstances at the time of the demand and refusal were such as to permit that defense, we are required, as was the trial justice in passing on the motion for a directed verdict, to view the evidence and the inferences to which it is reasonably susceptible in a light most favorable to defendant and without regard to its weight or the credibility of the witnesses. *Fontaine* v. *Devonis,* 114 R. I. 541, 543-44, 336 A.2d 847, 850-51 (1975); *Hone* v. *Lakeside Swimming Pool & Supply Co.,* 114 R. I. 394, 396, 333 A.2d 430, 431 (1975).

The nature and characteristics of a conversion have been variously described depending upon the particular fact situation. *Kaminow* v. *Cooper-Kenworthy, Inc.,* 79 R. I. 352, 355-56, 89 A.2d 165, 167 (1952); *Nestle-Lemur Co.* v. *Corrigan,* 60 R. I. 312, 316-17, 198 A. 360, 362-63 (1938); *Iavazzo* v. *Rhode Island Hosp. Trust Co.,* 51 R. I. 459, 462, 155 A. 407, 408 (1931). One textwriter has suggested that this tort reaches "* * * any conduct which deprives another of his property permanently or for an indefinite time or any exercise of dominion over the chattel which is inconsistent with the owner's property in it." 1 Harper & James, *Torts* §2.7 at 116 (1956). Included within this formula is the factual pattern where one, like defendant here, has rightfully come into possession of another's property, but refuses to surrender it upon demand to the person entitled thereto. *Lowney* v. *Knott,* 84 R. I. 425, 427-28, 125 A.2d 98, 99 (1956); *Terrien* v. *Joseph,* 73 R. I. 112, 115, 53 A.2d 923, 925 (1947); *Nelen* v. *Colwell,* 45 R. I. 465, 467, 123 A. 897, 898 (1924). Proof of such a demand and refusal is, however, "only *prima facie* proof of conversion, and is always open to explanation." *Buffington* v. *Clarke,* 15 R. I. 437, 438, 8 A. 247, 247 (1877).

Here defendant's explanation is to invoke the doctrine of qualified refusal, that is, to claim that the circumstances

existing at the moment of the demand and refusal were such as to make it reasonable for him to refuse Goodbody's demand to surrender the excess shares for a reasonable period of time without thereby becoming liable for conversion. Prosser, *Torts* §15 at 90-91 (4th ed. 1971); 1 Restatement (Second) *Torts* §238 (1965).

Typical of the kinds of cases in which a refusal is privileged under this doctrine are *Nelen* v. *Colwell, supra,* where surrender of a chattel on the demand of the one entitled to its immediate possession was impossible at the moment because the chattel was not then accessible, and *Buffington* v. *Clarke, supra,* where the possessor entertained a reasonable doubt of the claimant's right to possession and required a reasonable opportunity to verify his claim.

Here the circumstances which defendant argues justify his refusal include his prompt efforts to obtain 700 of the FMI shares held by Industrial as collateral on his loan account; his admission that the excess shares were not his and his expressed willingness to surrender those shares as soon as it became financially feasible for him to do so; his request that Goodbody lend him the amount necessary to secure the release of 700 FMI shares from Industrial; his consultation with an accountant to determine the incident's financial impact upon him; and his meeting with Goodbody's attorney in an attempt to achieve a solution. Finally, in contrast to his own assertedly reasonable actions, defendant points to Goodbody's demand that he immediately surrender the excess shares and pay all the retained dividends.

But defendant has not placed the proper emphasis on some of those circumstances and has omitted others of at least equal significance. One is his failure to offer to surrender the 352 shares of FMI stock standing in his name; another is his retention of dividends received on

all 700 shares. Both occurred after he learned that 700 shares belonged to Goodbody, and both certainly tend to negate the good faith prerequisite to the qualified refusal doctrine. 1 Restatement (Second) *Torts, supra* §241(a). Also important are his patently futile request to Goodbody to advance him funds sufficient to transform his liability for conversion into a deferred account payable and his failure to pursue alternative avenues of refinancing such as mortgaging his residence.

Viewing these circumstances in their totality compels the conclusion that they evidence nothing more than a bald attempt by defendant to delay surrender of Goodbody's securities until some indeterminate future time better suited to his personal finances and convenience. The defendant has cited no authority, nor have we found any, which applies the doctrine of qualified refusal in such circumstances, and we perceive no good reason for doing so.

Additionally, defendant argues that subsequent to the mistake overcrediting his account with 700 shares of FMI stock, his circumstances so changed as to make it inequitable to compel him to answer in damages for conversion and that his obligation to Goodbody should instead have been limited to surrendering the excess 700 shares and to paying the dividends accrued thereon minus his expenses. He bases this contention on the doctrine of change of circumstances as set forth in Restatement, *Restitution* §§69 and 142 (1937). While we do not question the applicability of that doctrine in an appropriate case, we feel that defendant's failure to delineate with sufficient specificity the before and after circumstances prevents its use as a partial defense.

Moreover, we question whether the defendant is precluded from urging the equitable defense of change of circumstances by reason of his conduct which, as previously noted in our discussion of the defense of qualified

refusal, was lacking in good faith. *See Brown* v. *Lake Superior Iron Co.*, 134 U. S. 530, 10 S.Ct. 604, 33 L.Ed. 1021 (1890).[3]

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed and the case is remitted to the Superior Court.

*Adler, Pollock & Sheehan Incorporated, Peter Lawson Kennedy*, for plaintiff.

*Higgins, Cavanagh & Cooney, John T. Walsh, Jr.*, for defendant.

---

[3]In that case the Supreme Court stated that "* * * the maxim, 'He who seeks equity must do equity,' is as appropriate to the conduct of the defendant as to that of the complainant" and that "[g]ood faith and early assertion of rights are as essential on the part of the defendant as of the complainant." *Brown* v. *Lake Superior Iron Co.*, 134 U. S. 530, 535, 10 S.Ct. 604, 606, 33 L.Ed. 1021, 1024-25 (1890).