Gina OSTROFF and Barry
Ostroff, Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as liquidating Agent/Receiver for Attleboro Pawtucket Savings Bank, Janice Mathews, Moshe Vaknim and Spitz–Wattman Realtors, Defendants.

Civ. A. No. 92–0632–T.

United States District Court,
D. Rhode Island.

March 10, 1994.

22. Rule 32, Local Rules of Court; Fed.R.Civ.P. 72(b).

23. *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

Richard C. Tallo, Law Offices of Richard C. Tallo, Providence, RI, for plaintiffs.

Laurel K. Bristow, Partridge, Snow & Hahn, Providence, RI, for F.D.I.C.

Patrick T. Conley, Jr., Lynch & Greenfield, Providence, RI, for Spitz–Wattman Realtors.

## ORDER

TORRES, District Judge.

The Report and Recommendation of United States Magistrate Judge Robert W. Lovegreen filed on February 4, 1994 is accepted pursuant to Title 28, United States Code, Section 636(b)(1)(B).

The defendant's motion for summary judgment is granted.

## REPORT AND RECOMMENDATION

LOVEGREEN, United States Magistrate Judge.

The matter presently before the Court for judicial review is the defendant, Federal Deposit Insurance Corporation's ("FDIC"), motion for summary judgment pursuant to F.R.Civ.P. 56(c) on Counts I, II and V through X of the plaintiff's complaint. On or about April 15, 1991, plaintiffs brought this action in Providence County Superior Court, concerning plaintiffs' failed attempt to purchase property located at 733–735 North Main Street, Providence, Rhode Island ("the Premises"), against Attleboro Pawtucket Savings Bank ("the Bank"), Janice Mathews, a Vice President of the Bank, Moshe Vaknim ("Vaknim"), owner of the Premises and Spitz–Wattman Realtors, brokers for the attempted sale of the Premises. By agreement of the parties on or about October 29, 1991, the action was dismissed as to Janice Mathews. Subsequently, plaintiffs entered into a settlement agreement with Vaknim, who is no longer a defendant to this action.

On August 21, 1992, the Commissioner of Banks of the Commonwealth of Massachusetts declared the Bank insolvent and ordered its closure. The Federal Deposit Insurance Corporation ("FDIC") was appointed

and accepted as Receiver and Liquidating Agent of the failed financial institution pursuant to an order of the Massachusetts Supreme Judicial Court in the case captioned *In the Matter of Attleboro Pawtucket Savings Bank,* C.A. No. 92–368 slip op. (MA S.J.C. August 20, 1992). Pursuant to its appointment, the FDIC succeeded to all rights, titles, powers and privileges of the Bank pursuant to 12 U.S.C. § 1821(d)(2). The contingent liability which is the subject of this action was retained by the FDIC.

The instant action, commenced in the Providence County Superior Court, was removed to this court by the FDIC. Plaintiffs thereafter successfully moved to amend the complaint, removing Vaknim as a party defendant and adding six additional counts.

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local Rule of Court 32(c)(2). For the following reasons, I recommend the defendant's motion for summary judgment be granted.

### Facts

In October of 1989, the record owner of the Premises was Moshe Vaknim. On October 12, 1989, Gina Ostroff entered into an agreement with Vaknim to purchase the Premises from him ("the Purchase and Sale Agreement"). Thereafter, plaintiffs claim to have spent some $100,000 renovating the Premises. At all times material hereto, Vaknim was in default under a $1,140,000 promissory note in favor of the Bank secured by a first mortgage on the Premises and other properties owned by Vaknim. In early 1990, the Bank, after numerous notices of default to Vaknim, notified him that it was accelerating his note and required him to pay the remaining balance owed in full by February 13, 1990. When Vaknim failed to pay, the Bank advertised a foreclosure sale to take place on April 13, 1990 pursuant to R.I.Gen. Laws § 34–11–22, the promissory note and the mortgage.

Plaintiffs began negotiating with the Bank in March, 1990 for a loan to finance the purchase of the Premises. On April 9, 1990, the Bank issued a commitment letter to Gina Ostroff approving her mortgage loan request in the amount of $162,000, subject to certain conditions. The plaintiffs and the FDIC concur that the Bank required the loan to Gina Ostroff be secured by a first mortgage on the Premises, as well as a first mortgage on Unit A3 North View Condominiums, 1801 Mineral Spring Avenue, North Providence, Rhode Island, owned by Gina Ostroff. It also required the sum of $180,000 be paid to the Bank to release the mortgage the Bank already had on the Premises. Gina Ostroff executed the commitment letter the same day it was issued.

On April 10, 1990, Gina Ostroff caused to be filed in the Land Evidence Records for the City of Providence a "Notice of Intention to do Work or Furnish Materials, or Both" with respect to the Premises, in the amount of $100,000, thereby, initiating a lien against the Premises under the provision of the Rhode Island Mechanics' Lien Law. R.I.Gen. Laws § 34–28–1 et seq.

Also, following the issuance of the commitment letter, but prior to any scheduled closing or the date of foreclosure, the Bank learned that the Internal Revenue Service had recorded a tax lien in the amount of $25,574.77 against the Premises and all other property owned by Vaknim. The Bank then informed Gina Ostroff of the tax lien.

Due to the substantial liens on the Premises, the Bank concluded that clear title could not be conveyed by Vaknim to Gina Ostroff. Therefore, Gina Ostroff could not give the Bank a first mortgage on the Premises as required. Consequently, the closing on the Premises did not take place, and the foreclosure sale went forward on April 13, 1990 as advertised. Both the Bank and the plaintiffs were present and bid at the foreclosure sale, but the Bank was successful and purchased the Premises.

### Discussion

#### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving part is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, I must review the evidence in the light most ·favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Mesnick v. General Electric Co.,* 950 F.2d 816, 820 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c); *see Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992).

Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the onus falls upon the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing F.R.Civ.P. 56(e)); *see Goldman,* 985 F.2d at 1116; *Lawrence,* 980 F.2d at 68; *Garside,* 895 F.2d at 48 ("[A] 'genuine issue' exists if there is 'sufficient evidence supporting this claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" (quoting *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Moreover, the evidence presented by the nonmoving party

" 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.'" *Mesnick,* 950 F.2d at 822 (quoting *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Thus, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman,* 985 F.2d at 1116 (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511).

## II. Count I—Breach of Contract

■ Count I of the Amended Complaint alleges that the Bank breached its financing contract with the plaintiffs, Gina and Barry Ostroff. (Amended Complaint ¶ 25.) As a preliminary matter, Barry Ostroff was not a party to the financing contract. The commitment letter dated April 9, 1990 is addressed to Gina Ostroff only and is executed as accepted by Gina Ostroff only. Therefore, the FDIC should be granted summary judgment on Barry Ostroff's claim under Count I of the Amended Complaint.

■ . The FDIC should similarly be granted summary judgment on Gina Ostroff's claim that the Bank breached their finance agreement as she did not fulfill the condition precedent to the Bank's duty to provide financing pursuant to the commitment letter. It is generally accepted that under the common law "[n]on-occurrence of a condition precedent discharges the other party's duty of performance." *B–B Co. v. Piper Jaffray & Hopwood, Inc.,* 931 F.2d 675, 678 (10th Cir. 1991); *see also Falcon v. Mathews,* 47 R.I. 237, 132 A. 609 (1926) (stating a party has the right to specify the conditions upon which he or she agrees to be bound and that the party is not thereby bound if those conditions are not met). Plaintiffs do not contest that

the Bank's obligation to provide financing pursuant to the commitment letter was conditioned upon Gina Ostroff's grant of a first mortgage on the Premises to the Bank. A condition precedent to her ability to grant that first mortgage was her receipt of clear title to the property from Vaknim. The tax lien for $25,574.77 on the Premises and Gina Ostroff's own Mechanics' Lien on the Premises for $100,000 prevented clear title from passing to her. As a result, she was prevented from granting the Bank a first mortgage on the Premises, and since such grant was a condition precedent to the Bank's obligation to finance the purchase, the Bank was under no obligation to perform pursuant to the commitment letter. With no duty to perform under the commitment letter, the Bank cannot be held to have breached that agreement when it refused to finance the purchase while the liens were in place or when it lawfully foreclosed on the Premises as a result of Vaknim's default on his mortgage thereon.

█ In an apparent attempt to argue that the Bank agreed to provide her with the time to satisfy the previously mentioned conditions precedent, Gina Ostroff claims that she offered to clear up the tax lien and rescind the mechanics' lien in order to go forward with the sale. Assuming arguendo that such an agreement, if present in this case, would alter the parties obligations under the commitment letter, the agreement must be considered invalid under both *D'Oench Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and 12 U.S.C. § 1823(e). Thus, Gina Ostroff's claim that she offered to clear up the liens does not present a material fact, a dispute over which would prevent a summary judgment for the FDIC on Count I.

█ The essence of the *D'Oench* rule as it applies in this case is that oral agreements, not recorded in the official records of a bank, may not be used as the basis of a claim for affirmative relief against the FDIC, acting as receiver and liquidating agent for a failed bank. *See Timberland Design, Inc. v. FDIC*, 745 F.Supp. 784, 787 (D.Mass.1990), *aff'd sub nom., Timberland Design, Inc. v. First Service Bank for Savings*, 932 F.2d 46 (1st Cir.1991); *Beighley v. FDIC*, 676 F.Supp.

130 (N.D.Tex.1987), *aff'd*, 868 F.2d 776 (5th Cir.1989); *FSLIC v. Hsi*, 657 F.Supp. 1333, 1338 (E.D.La.1986). This rule reflects the "federal policy to protect the [FDIC] and the public fund which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans." *D'Oench Duhme & Co., Inc. v. FDIC*, 315 U.S. at 457, 62 S.Ct. at 679. The purposes underlying this policy are to encourage a prudent consideration of lending practices, to assure proper recordation of banking acts to guard against collusive or erroneous reconstruction of terms and to satisfy the urgent need of banking regulators to be able to determine the face value of the remaining assets of the failed institution. *See Langley v. FDIC*, 484 U.S. 86, 91–93, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340 (1987).

In addition to the *D'Oench Duhme* doctrine, Congress enacted 12 U.S.C. § 1823(e) to protect the FDIC from unsubstantiated claims. That section provides:

No agreement which tends to diminish or defeat the interests of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation [FDIC] unless such agreement—

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e).

The Bank's records, now in the possession of the FDIC, contain no written document, memorandum or record indicating or pertain-

ing to any agreement or offer by the plaintiffs to cure the liens against the Premises. (Aff. of Leslie A. Coleman, Esq. ¶ 5.) Thus, such agreement or offer does not meet the requirements of the *D'Oench Duhme* doctrine or 12 U.S.C. § 1823(e) and therefore cannot be considered a valid basis for the plaintiffs' claims against the FDIC. As a result, the FDIC should be granted summary judgment on Count I of the plaintiffs' Amended Complaint.

### III. Count II—Unjust Enrichment

The FDIC should be granted summary judgment on Count II which alleges that the Bank benefited from the improvements plaintiffs made to the Premises, and therefore, the FDIC is liable to the plaintiffs under the theory of unjust enrichment for the cost of those improvements. (Amended Complaint ¶ 27.) In *R & B Electric Co., Inc. v. Amco Construction Co., Inc.*, 471 A.2d 1351 (R.I. 1984), the Rhode Island Supreme stated:

> To recover under quasi-contract for unjust enrichment, a plaintiff must prove three elements. First, a benefit must be conferred upon the defendant by the plaintiff. Second, there must be an appreciation by the defendant of such benefit. Finally, there must be an acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without paying the value thereof. *See Bailey v. West*, 105 R.I. 61, 67, 249 A.2d 414, 417 (1969); *Paschall's, Inc.* [*v. Dozier*], 219 Tenn. [45] at 57, 407 S.W.2d [150] at 155 [ (1966) ]; Annot., 62 A.L.R.3d § 2 at 294. Simply conferring a benefit upon a landowner by a subcontractor is not sufficient to establish a claim for unjust enrichment. "The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust." *Paschall's, Inc.*, 219 Tenn. at 57, 407 S.W.2d at 155; *See also* Annot., 62 A.L.R.3d § 2 at 294.

*Id.* at 1355–1356.

Both *SMP Sales Management, Inc. v. Fleet Credit Corp.*, 960 F.2d 557 (5th Cir. 1992), and *South Shore Bank v. International Jet Interiors*, 721 F.Supp. 29 (E.D.N.Y. 1992), are instructive as to the viability of unjust enrichment claims against foreclosing banks. In both those cases, debtors defaulted on loans made by banks which were secured by assets of the debtor, and the banks subsequently foreclosed on those assets. *SMP Sales*, 960 F.2d at 558; *South Shore Bank*, 721 F.Supp. at 31. Prior to the defaults, SMP Sales Management, Inc. ("SMP") and International Jet Interiors ("IJI") performed services for the respective debtors without being paid, thereby becoming unsecured creditors. Specifically, SMP acted under contract as the debtor's exclusive sales representative, and IJI refurbished the interior of an airplane owned by the debtor. *SMP Sales*, 960 F.2d at 558; *South Shore Bank*, 721 F.Supp. at 31. Both SMP and IJI brought claims against the foreclosing secured creditors for payment for the services they had provided, claiming that the value of the respective debtors' assets had been increased by the services they had performed, and thus, the secured creditors were unjustly enriched when they foreclosed on those assets and received the benefit of the improved value. *SMP Sales*, 960 F.2d at 558; *South Shore Bank*, 721 F.Supp. at 32. Neither court found the Banks had been unjustly enriched.

> The court in *SMP Sales* reasoned that [t]he actions taken by [the bank] are indistinguishable from those taken by any secured creditor, in that the labor of unsecured creditors renders the secured creditor's position more attractive than it would have been absent the actions of the unsecured creditor. It does not follow, however, that by enjoying the status as a secured creditor one has been enriched.... [The bank] obviously suffered a loss in this case, but because of the efforts of many unsecured creditors suffered less of a loss than it might have. This does not mean that all such unsecured creditors are therefore entitled to bring an unjust enrichment action.

*SMP Sales*, 960 F.2d at 560.

Not every unjust enrichment warrants usage of equity. Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract. In other words, an enrichment is justified if it is the result of, or finds its explanation in, the term of a valid juridical

act between the impoverishee and the enrichee or between a third party and the enrichee.

*SMP Sales,* 960 F.2d at 560 (quoting *Carter v. Flanagan,* 455 So.2d 689, 692 (La.Supp.2d Cir.1984)).

Both courts noted that the respective banks had never contract with SMP or IJI to perform the work done, *SMP Sales,* 960 F.2d at 558; *South Shore Bank,* 721 F.Supp. at 32, and the court in *South Shore Bank* pointed out that IJI could have taken steps to insure that it would receive value for the work it had performed but did not do so, *South Shore Bank,* 721 F.Supp. at 32.

■ The facts of the present case are similar to those in *SMP Sales* and *South Shore Bank,* and accordingly, the same result should follow. It is true that in those cases SMP and IJI had performed work pursuant to a contract with the respective debtors, and were thus unsecured creditors, while the plaintiffs here did not make the improvements to the Premises pursuant to any contract. This distinction is of little consequence for the purposes of unjust enrichment analysis. The plaintiffs here, just like SMP and IJI, are claiming that their actions increased the value of a debtor's (Vaknim's) assets, unjustly enriching the Bank when it foreclosed on those assets, and like SMP and IJI, the plaintiffs claims must also fail.

In the present case, the Bank's actions were justified. Like the bank in *SMP Sales,* the present Bank was justified in foreclosing on the debtor's (Vaknim's) assets. Vaknim was in default on his mortgage, the note had been accelerated, demand for payment had been made and the foreclosure had been properly advertised. The Bank, as a secured creditor that justifiably forecloses on its collateral, has priority over other unsecured parties in payment from the proceeds of a foreclosure sale. Requiring it to pay those unsecured parties would render its status of secured creditor meaningless. *SMP Sales,* 960 F.2d at 560. Moreover, the plaintiffs, like IJI, could have protected themselves against losing the value they added to the premises. It is they who took the risk here by making improvements to a building that they did not at the time own. Thus, the Bank as secured creditor was not unjustly enriched.

Similarly, the Bank as purchaser of the Premises at foreclosure was not unjustly enriched. The Bank paid market value for the Premises at foreclosure, including any improvements thereto, and therefore did not receive them unjustly. Consequently, the Bank was not unjustly enriched by any improvements the plaintiffs made to the premises, and as a result, the FDIC should be granted summary judgment on Count II of the Amended Complaint.

## IV. Count V—Breach of Duty of Good Faith and Fair Dealing

■ The FDIC should be granted summary judgment as to Count V. This count alleges that the Bank breached an obligation of good faith and fair dealing to the plaintiffs. (Amended Complaint ¶ 33.) Implied in every contract is a duty of good faith and fair dealing., *Ide Farm Stable, Inc. v. Cardi,* 110 R.I. 735, 297 A.2d 643 (1972), but such an implied duty presupposes that an obligation exists, *Laz–Karp Realty, Inc. v. Gilbert,* 777 F.Supp. 1085 (D.R.I.1990). As stated previously, Barry Ostroff was not a party to the finance contract with the Bank. Thus, the Bank was under no obligation to him. Further, as noted in the discussion of Count I, the Bank was under no obligation to provide financing to Gina Ostroff pursuant to the commitment letter, because the liens on the Premises prevented her from granting the Bank a first mortgage as required. Thus, with the Bank under no obligation pursuant to the commitment letter, it cannot be said to have breached a duty of good faith and fair dealing to the plaintiffs.

## V. Count VI—Fraudulent Misrepresentation

■ Count VI of the Amended Complaint, in which plaintiffs allege that the bank committed fraud when it concealed and misrepresented Vaknim's insolvency, should also fail. In *McCullough v. FDIC,* 987 F.2d 870 (1st Cir.1993), the United States Court of Appeals for the First Circuit held, on facts similar to those in the present case, that the

requirements of 12 U.S.C. § 1823(e)[1] apply to misrepresentation claims based on non-disclosure. *Id.* at 874. Plaintiffs in that case had given a note to Bank of New England ("BNE") in exchange for a loan which plaintiffs used to purchase four units of an industrial condominium project in which BNE had a significant interest. *Id.* at 872. Plaintiffs contended that BNE committed a misrepresentation, because BNE, when it extended the loan, failed to disclose to them that the project was subject to a Notice of Responsibility ("NOR") previously issued by the Massachusetts Department of Environmental Quality Engineering. *Id.* The NOR required the removal of certain hazardous materials. *Id.*

The *McCullough* court, relying on the United States Supreme Court decision in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), stated that

> as a matter of contractual analysis, a contractually bound party's attempt to avoid a contractual obligation and/or to seek damages through a claim of misrepresentation is nothing more that a challenge to the truthfulness of a warranty made by another party to the contract, and a concomitant claim that the truthfulness of that warranty was a condition of the first party's performance. In other words, the claim is analogous to one for breach of warranty, with the warranty being a condition precedent to performance. Therefore, because such a warranty falls within the purview of the term "agreement," this type of breach of warranty claim cannot be asserted against the FDIC unless the warranty meets the requirements of § 1832(e).
>
> We can find no logical basis for this reasoning not obtaining with equal force where the misrepresentation at issue arises out of a non-disclosure of information.

*Id.* at 873 (citations and footnote omitted). The court went on to point out that § 1823(e) applied to the plaintiffs' claims whether they sounded in contract or tort and concluded that "because [the misrepresentation] claim arises out of an alleged warranty that was unwritten and otherwise did not comply with the requirements of [§ 1823(e) ], we hold that the district court properly ruled that the claim cannot, as a matter of law, be asserted against the FDIC." *Id.* at 874.

The facts in the present case are analogous to those in *McCullough,* and thus, this court is bound by its holding. Here, plaintiffs claim that the Bank misrepresented or failed to disclose the fact of Vaknim's insolvency to them, (Amended Complaint ¶ 35), but plaintiffs have not shown or alleged that any warranty of Vaknim's solvency appears in the Bank records. Thus, the plaintiffs' claim of misrepresentation does not meet the requirements of 12 U.S.C. § 1823(e) and accordingly, cannot be asserted against the FDIC.

## VI. Count VII—Tortious Interference with Contractual Relations

 The FDIC should be granted summary judgment on Count VII of the Amended Complaint which alleges that the Bank tortiously interfered with the plaintiffs' contractual relationships, "namely the purchase and sale agreement and the anticipated deed Plaintiffs needed to conduct a retail business on the premises." (Amended Complaint ¶ 38.) The necessary elements of the tort of intentional interference with contractual relations are: "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages resulting therefrom." *Banco Totta e Acores v. Fleet National Bank,* 768 F.Supp. 943, 951 (D.R.I.1991) (quoting *Smith Devel. Corp. v. Bilow Enterprises, Inc.,* 112 R.I 203, 211, 308 A.2d 477, 482 (1973)). In order to be actionable, such interference must be unjustified. *See Smith Devel. Corp. v. Bilow Enterprises,* 112 R.I at 208, 308 A.2d at 480.

 The plaintiffs' written argument concerning this count improperly reiterates their breach of the contract claim found in Count I and then summarily concludes that the Bank intentionally interfered with the Purchase and Sale Agreement with Vaknim "by negotiating and drawing up a contract for financing while foreclosure was moving apace." (Memo. in Obj. to Def. FDIC's Mot. for

---

**1.** 12 U.S.C. § 1823(e), *supra,* at 9.

Summ. J. at 21–23.) Clearly, the Bank's entrance into the commitment letter with plaintiffs' did not interfere with the purchase and sale of the Premises; if anything, it was an attempt to facilitate it.

 Further, Count VII similarly fails to the extent the plaintiffs' claim thereunder can be read to contend that the Bank's failure to grant plaintiffs financing and its foreclosure on the Premises interfered with the plaintiffs' contractual relations with Vaknim. First, it appears that no contract existed between plaintiffs and Vaknim at the time of the foreclosure. The last extension of the Purchase and Sale Agreement that has been brought to the court's attention expired February 29, 1990, approximately one and one half months before the April 13, 1990 foreclosure. Second, assuming the Purchase and Sale Agreement was valid through April, 1990, any interference with it from the Bank's failure to finance the deal and its foreclosure on the Premises was justified because of the liens on the property and Vaknim's default on his mortgage on the Premises.[2] Therefore, any such interference cannot be the basis for the plaintiffs' claim under Count VII. Consequently, the FDIC should be granted summary judgment on this Count.

### VII. Count VIII—Prima Facie Tort

The FDIC's motion for summary judgment on Count VIII of the amended complaint should be granted. That Count alleges that "[t]he defendants are liable under the theory of Prima Facie Tort for intentionally causing damage to the Plaintiffs without justification." (Amended Complaint ¶ 40.) The elements of prima facie tort are outlined in the Restatement (Second) of Torts §§ 870 and 871 (1979). Section 870 states:

One who intentionally causes injury to another is subject to liability to the other for

that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability.

Id. § 870. Section 871 states:

One who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances.

Id. § 871.

 Neither party has argued which jurisdiction's law governs the issues presented in this case, but assuming arguendo that the doctrine of prima facie tort is a recognized basis for relief under the law governing this case[3], plaintiffs are unable to establish all of the required elements of this tort. In fact, plaintiffs fail to specifically allege the elements of prima facie tort in Count VIII of the Amended Complaint and refrain from any discussion of them in their arguments in opposition to this motion. Both §§ 870 and 871 require the tortfeasor's conduct to be unjustifiable. As stated previously in the discussion of Count I, the Bank was justified in foreclosing on the Premises in light of Vaknim's default on his mortgage thereon. The Bank was also justified in not extending financing to plaintiffs, because the liens on the Premises prevented the plaintiffs from providing the Bank with a first mortgage on the Premises as required. Consequently, plaintiffs cannot establish the elements of prima facie tort, and accordingly, Count VIII should fail.

### VIII. Count X—Negligence

 The FDIC should be granted summary judgment on Count X of the Amended Complaint, which alleges that the

---

2. See Discussion of Count I, supra.

3. The Bank is a banking corporation organized under the laws of the Commonwealth of Massachusetts with its principle place of business in Pawtucket, Rhode Island. Ostroff v. Attleboro Pawtucket Savings Bank, Answer of Def. Attleboro Pawtucket Savings Bank ¶ 3 (R.I.Sup.Ct. filed April 15, 1991). Plaintiffs are residents of

North Providence, Rhode Island. (Amended Complaint ¶ 1.) A search of the case law of the State of Rhode Island, the Commonwealth of Massachusetts, the United States District Courts for the Districts of Rhode Island and Massachusetts and the United States Court of Appeals for the First Circuit reveals no case adopting the doctrine of prima facie tort.

"Defendants by their actions or inactions are liable for negligently handling and processing the loan application and other documents in this case," with no further elaboration. (Amended Complaint ¶ 45.) To prove negligence, plaintiffs must establish the existence of a duty of care owed to them, a breach of that duty and that said breach proximately caused injury to the plaintiffs resulting in actual damages. *Lutz Engineering Co., Inc. v. Industrial Louvers, Inc.*, 585 A.2d 631, 635 (R.I.1991). Whether such a duty exists is a question of law to be determined by the court. *Barratt v. Burlingham*, 492 A.2d 1219, 1222 (R.I.1985).

■ Plaintiffs have not alleged in their Amended Complaint, nor argued in opposition to this motion, the existence of any duty owed to them by the Bank that was breached, causing them injury. Simply put, the plaintiffs' blanket allegation of negligence in processing the loan application is not enough to demonstrate a viable claim of negligence, as it in no way evidences that the plaintiffs' claims consist of the required elements of a claim of negligence.

Plaintiffs point to the Supreme Court of Florida's decision in *Barnett Bank of West Florida v. Hooper*, 498 So.2d 923 (Fla.1986) in support of their negligence claim, but that case provides no support for this claim. In that case, the court held that "where a bank becomes involved in a transaction with a customer with whom it had established a relationship of trust and confidence, and it is a transaction from which the bank is likely to benefit at the customer's expense, the bank may be found to have assumed a duty to disclose facts material to the transaction, peculiarly with in its knowledge, and not otherwise available to the customer." *Id.* at 925. The relationship required under *Barnett Bank* has been defined as a fiduciary one. *Watkins v. NCNB National Bank of Florida*, 622 So.2d 1063, 1065 (Fla.1993).

■ In this case, plaintiffs have not alleged that their relationship with the Bank was one of trust or confidence, or fiduciary in nature. Moreover, the existence of the tax lien and the impending foreclosure on the Premises were not facts unavailable to the plaintiffs. Surely, a search of the Premises' title would have revealed the existence of the tax lien, and notice of the foreclosure sale was published in the *Providence Journal–Bulletin* on March 20 and 29 and April 5 and 12 of 1990 (Aff. of Leslie A. Coleman, Esq. ¶ 4(c)). Thus, plaintiffs cannot establish the elements of liability enumerated in *Barnett Bank*. Consequently, the FDIC should be granted summary judgment on Count X of the Amended Complaint.

### IX. Count IX—Infliction of Emotional Distress

■ Lastly, the FDIC should be granted summary judgment as to Count IX, which alleges liability based on intentional infliction of emotional distress. (Amended Complaint ¶ 43.) Emotional distress is "merely a theory regarding the damages sought and requires a predicate of liability to support it." *DeCosta v. Viacom International, Inc.*, 758 F.Supp. 807, 813 n. 3 (D.R.I.1991) (citing *DeCosta v. Columbia Broadcasting System, Inc.*, 520 F.2d 499, 515 (1st Cir.1975)), *rev'd on other grounds, DeCosta v. Viacom International, Inc.*, 981 F.2d 602 (1st Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993). Since, summary judgment is recommended as to all the plaintiffs' claims against the FDIC, no predicate of liability remains to support their claim of infliction of emotional distress. Consequently, summary judgment should be granted to the FDIC on Count IX as well.

### Conclusion

For the reasons stated above I recommend that defendant's motion for summary judgment be granted.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.[4] Failure to file specific objec-

4. Rule 32, Local Rules of Court; F.R.Civ.P. 72(b).

tions in a timely manner constitutes a waiver of the right to review by the district court.[5]

February 4, 1994

---

**5.** *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford* *Motor Co.,* 616 F.2d 603 (1st Cir.1980).