DECISION
Before the court are R.C.P. 56 motions for summary judgment filed by defendants Frank Iafrate, John Celona, Judith Diorio, Elena Pherigo, Robert Russo, and Alexander Longo[1], defendants John Magnano and Armand DiNapoli, and defendants Nicholas and Regina Cambio. Decision is rendered herein.
Facts
In April, 1985, Central Credit Union (Central) made a loan to Dominic DiPasquale, who in turn granted Central a mortgage on property he owned located at 22 Hope Hill Terrace in Cranston. DiPasquale subsequently transferred the Hope Hill property to Joan Bruno. Bruno purchased the property subject to the Central mortgage and paid DiPasquale to construct a home on the property.
DiPasquale eventually defaulted on the April, 1985, loan, prompting Central to retain Lloyd Rustigian to initiate foreclosure proceedings. Bruno filed suit to stop the foreclosure auction and obtain restitution from DiPasquale. A court ordered DiPasquale to repay Bruno approximately $155,000. DiPasquale's failure to meet that order eventually resulted in his incarceration at the Adult Correctional Institution.
In order to pay Bruno, DiPasquale sought the assistance of his sister, Patricia Harritos. Ms. Harritos, along with her husband, Vasilios, applied for a loan from Central. As collateral, the Harritos pledged a second mortgage on their home located at 67 Sunnyside Drive in Warwick. Central rejected this application on the grounds that the Harritos had insufficient equity in the property.
The Harritos and DiPasquale then sought help from Nicholas Cambio. Cambio eventually agreed to transfer three pieces of property, two in West Greenwich and one in Cranston, to the Harritos to be used as additional collateral. One of the parcels in West Greenwich was sold and the proceeds placed in an account at Central. The remaining properties were transferred by Cambio to the Harritos.[2]
With these additional properties pledged as collateral, the Harritos' second application was granted. Despite DiPasquale's promise to make the monthly payments on the loan, however, he soon defaulted. Central foreclosed on all properties pledged as collateral, including the Harritos' home. The Harritos filed a twenty-count complaint on February 21, 1992, alleging various theories of relief against various defendants.
Despite the large number of counts and defendants, previous events have narrowed the court's focus. On August 3, 1992, a default judgment was entered against defendant Dominic DiPasquale. On August 4, 1994, summary judgment was entered in favor of defendant Lloyd Rustigian. As counts X, XI, XII, and XIII contained allegations solely against Rustigian, they will not be addressed. On February 5, 1996, defendant Robert Cirisi was dismissed as a party. On February 13, 1996, the plaintiffs stipulated to the dismissal of defendant Emilio Cerroni.
The remaining defendants moved for summary judgment on all remaining claims contained in the plaintiffs' amended complaint filed December 19, 1994.[3] For the sake of simplicity, the remaining defendants are categorized into three groups. The first group includes Central's Outside Directors, Frank J. Iafrate, John A. Celona, Judith Diorio, Elena Phergio, Robert Russo, and Alexander Longo[4] ("Outside Directors"). The second group is comprised of John C. Magnano, President of Central, and Armand G. DiNapoli, Central's Manager and Treasurer ("Central's Officers"). The final group consists of Nicholas and Regina Cambio ("the Cambios").
Summary Judgment Standard
Summary judgment is a means of curtailing litigation when the court finds that no genuine issue of material fact exists. TrendPrecious Metals v. Sammartino, 577 A.2d 986, 988 (R.I. 1990). In making its decision, the court recognizes that summary judgment is a drastic remedy that should be cautiously applied. Rustigianv. Celona, 478 A.2d 187, 189 (R.I. 1984). While a party opposing a motion for summary judgment has the burden of showing the existence of a genuine issue of material fact, Grissom v.Pawtucket Trust Co., 559 A.2d 1065, 1066 (R.I. 1989), the court examines the pleadings, affidavits, admissions, answers to interrogatories and other documents in the light most favorable to that party. O'Hara v. John Hancock Mutual Life Insurance Co.,574 A.2d 135, 136 (R.I. 1990). The party opposing the motion may not rest upon mere allegations or denials in its pleading and has an affirmative duty to set forth specific facts showing a genuine issue of fact to be resolved at trial. Grande v. Almac's, Inc.,623 A.2d 971, 972 (R.I. 1993); Ouimette v. Moran, 541 A.2d 855, 856 (R.I. 1988). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment should be granted. Grande, 623 A.2d at 972.
Count I — Federal RICO
In count I of their complaint, the plaintiffs claim that the Outside Directors, Central's Officers, and the Cambios violated the federal Racketeer Influenced Corrupt Organization (RICO) statute, 18 U.S.C. §§ 1961-1968. To prevail under this statutory scheme, a plaintiff must show "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity' and must also show that (5) the racketeering activity caused injury to the plaintiff's business or property." Collazo v. Oriental FederalSavings Bank, 913 F.2d 5, 5-6 (1st Cir. 1990) quoting Sedima,S.P.R.L. v. Imrex, Co., 473 U.S. 479, 496 (1985).
The Outside Directors argue that the plaintiffs' failure to allege a "pattern" of racketeering activity is fatal to recovery. In support of their claim, the Outside Directors rely on NationalCredit Union Admin Bd. v. Regine, 749 F. Supp. 401 (D.R.I. 1990). In Regine, the court analyzed the pattern requirement and determined that "in order to prove a pattern of racketeering activity, a plaintiff . . . `must show that the racketeering predicates are related and that they amount to or prove a threat of continued criminal activity.'" Id. at 406, quoting H.J. Inc.v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989).
The plaintiffs contend that the deposition testimony of a Central Credit Union loan officer raises a factual issue as to whether such a pattern exists. Specifically, the plaintiffs' argue that approval of a loan to Cambio and DiPasquale suggests that a pattern existed. The plaintiffs' contentions are insufficient to withstand summary judgment on this issue. The acts of the defendants cannot be said to constitute a pattern as required by the statute.
Count II — State RICO
In count II, the plaintiffs allege that the Outside Directors, Central's Officers, and the Cambios violated the Rhode Island RICO Act G.L. 1956 (1992 Reenactment) § 7-15-1 et seq. The defendants named in this count contend that the plaintiffs have failed to show that those defendants participated in any conduct prohibited by the state statutes. The plaintiffs allege the defendants violated the statute by engaging in larceny, fraudulent conversion, and obtaining property by false pretenses. The Outside Directors and Central's Officers point to the absence of any evidence of intent on their part to unlawfully deprive the plaintiffs of their property. Intent is an element of all three of the underlying offenses charged. The Cambios argue that the plaintiffs have not alleged, nor can they prove, that the Cambios received any income from the alleged enterprise.
The plaintiffs respond to these contentions with mere conclusory allegations. They have failed to set forth evidence tending to show the existence of a material fact on this issue. In the absence of such a showing, the defendants are entitled to summary judgment on this count.
Count III — Breach of Fiduciary Duty
The plaintiffs allege that defendant Outside Directors and Central's Officers breached the fiduciary duty that they owed to the plaintiffs as borrowers.[5] In order for a fiduciary duty to be breached, it must originally be owed. The Outside Directors and Central's Officers argue that, absent exceptional circumstances, no such duty exists between a bank and its borrowers. In re Belmont Realty Corp., 11 F.3d 1092, 1101 (1st Cir. 1993). The Belmont Realty court reached this conclusion after examining the parties' relationship in light of the factors normally considered when evaluating fiduciary relationships. Id.
Those factors include (1) the reliance of one party upon the other; (2) the relationship of the parties prior to the incident complained of; (3) the relative business capacities or lack thereof between the parties; and (4) the readiness of one part to follow the others guidance in a complicated transaction. Simpsonv. Dailey, 496 A.2d 126, 129 (R.I. 1985). After considering these factors, the court finds that no fiduciary duty existed.
The plaintiffs rely on Briggs v. Spaulding, 141 U.S. 132
(1895) and Toledo Savings Bank v. Johnson, 62 N.W. 748 (Iowa 1895) in arguing that a director owes a duty of "the most scrupulous good faith and perfect honesty." As the defendants keenly note, however, those cases addressed the issue of the duty owed to institutions, not individual borrowers. Not to be deterred, the plaintiffs claim that because they were required to become members of Central prior to obtaining the loan, they were owed a fiduciary duty. Again, defendant Outside Directors accurately point out that any such duty extended to the plaintiffs as depositors, not as borrowers. Breach of this duty is not actionable by the plaintiffs. See In re RISDIC Litigation(Brown University Employees Credit Union), 662 A.2d 64, 66 (R.I. 1995) (only receiver, and not individual depositors, has standing to assert claims affecting institution as a whole). Summary judgment shall issue in favor of the defendants on this count.
Count IV — Negligence
The plaintiffs claim that by failing to prudently and truthfully review their mortgage application, the Outside Directors and Central's Officers are liable on a negligence theory.[6] In order to prove negligence, the plaintiffs must establish the existence of a duty of care owed to them, a breach of that duty and that said breach proximately caused injury the plaintiffs resulting in actual damages. Lutz Engineering Co.,Inc. v. Industrial Louvers, Inc., 585 A.2d 631, 635 (R.I. 1991). The existence of such a duty is a question of law to be determined by the court. Barratt v. Burlington, 492 A.2d 1219, 1222 (R.I. 1985). If no duty of care is owed, summary judgment must issue. Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1224-25 (R.I. 1987).
The plaintiffs' blanket assertions are insufficient to demonstrate a viable claim of negligence against the Outside Directors and Central's Officers. Ostroff v. F.D.I.C.,847 F. Supp. 270, 280 (D.R.I. 1994). As the plaintiffs have failed to produce evidence sufficient to permit the court to find that a duty was owed by the defendants, summary judgment shall issue in favor of the defendants on this count.
Count V — Misrepresentation
In count V, the plaintiffs seek recovery based on misrepresentations made by the Outside Directors, Central's Officers, and the Cambios. The plaintiffs' unartfully drafted complaint reads, in part, as follows:
 58. By virtue of their status as fiduciaries, mortgagees, relatives, and/or grantors, the defendants had a duty to keep plaintiffs fully, accurately and timely informed of all facts material to the sale of said real property and the making of said loan.
 59. The defendants at various times, directly and indirectly, misrepresented to the plaintiffs that they would apply proceeds from the subsequent sale of mortgaged real property toward the payment of said loan.
 60. Defendants falsely represented and plaintiffs reasonably believed that the Hope Hill Terrace property being purchased with loan proceeds was being conveyed with good and sufficient marketable title, as were the other properties, and were thus good collateral.
The tort of misrepresentation contains five elements, including (1) a false representation of a material fact; (2) scienter; (3) intent to induce the plaintiff to act in reliance on the statement; (4) justifiable reliance by the plaintiff; and (5) damages. LaFazia v. Howe, 575 A.2d 182, 185 (R.I. 1990); Katzv. Prete, 459 A.2d 81, 84 (R.I. 1983). The plaintiffs have failed to articulate evidence showing the existence of an issue of material fact. Specifically, the plaintiffs are unable to point to any material misrepresentations made by any defendant that would give rise to liability. Summary judgment shall issue in favor of the defendants on this count.
Count VI — Unjust Enrichment
The plaintiffs next claim that the Outside Directors, Central's Officers, and the Cambios were unjustly enriched as a result of their actions. The plaintiffs request an accounting to determine the exact amount of such enrichment. To prevail on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for the defendant to retain the benefit without paying for it.Landmark Medical Center v. Gauthier, 635 A.2d 1145, 1148-49 (R.I. 1994); Bailey v. West, 105 R.I. 61, 67, 249 A.2d 414, 417 (1969).
The plaintiffs complaint alleges that
 "as a direct, proximate, and intended result of defendants' wrongful acts and omissions described herein, including concealing the existence of known liens and encumbrances, lying about the payment application, and misrepresenting the nature of the transactions, defendants wrongfully obtained, or allowed others to obtain from the plaintiffs, directly and indirectly, money and payments that otherwise would not have been made had the plaintiffs known the true facts, all of which were known to the defendants." Amended Verified Complaint, ¶ 66.
The plaintiffs have not stated a valid claim for unjust enrichment. They have simply restated their fraud, misrepresentation, and conversion claims, among others. Count VI carries no greater weight with a different label. Summary judgment shall issue in favor of all defendants on this count.
Count VII — Breach of Contract
In count VII, the plaintiffs seek recovery for breach of contract by the Outside Directors and Central's Officers.[7]
The defendants named in this count argue that no contract existed between the plaintiffs and the individual defendants. It is axiomatic that in order for a breach of contract to occur, there must be a valid, underlying contract. The plaintiffs have failed to point to any such contract here, choosing to argue that "plaintiffs' deposits, mortgage application, promissory note, and mortgage in whatever form, each created express and implied contractual obligations between the plaintiffs and Central." Amended Verified Complaint, ¶ 69. This is insufficient to create a material fact on this issue.
Even if a contract did exist, the plaintiffs have not produced any evidence tending to show an unlawful breach of that contract by any defendant. Again, this failure is fatal to the plaintiffs' claim. Summary judgment shall issue in favor of the defendants on this count.
Count VIII — Breach of Warranty
The plaintiff's breach of warranty claim extends to the Outside Directors, Central's Officers, and the Cambios. The Cambios cite Hayes v. Plantation Steel Co., 438 A.2d 1091 (R.I. 1982) in arguing that the plaintiffs claim must fail in the absence of evidence of valid consideration for the properties transferred. While Hayes involved a breach of contract rather than a breach of warranty, the requirement of consideration is equally relevant. The plaintiffs concede as much by arguing that Nicholas Cambio's effort to have the loan approved "does not reconcile itself easily with the notion of a gift." plaintiffs' Memoranda at 6. This argument is plainly insufficient to avoid summary judgment. The plaintiffs have the burden of responding to the Cambio's contention by providing evidence that consideration for the properties did in fact exist. The plaintiffs have failed to meet this burden.
The Outside Directors and Central's Officers move for summary judgment on the grounds that the plaintiffs have failed to show that these defendants warranted that the loan or the security posted were anything other than what was represented in the promissory note or the other loan documents. The plaintiffs' argument is found in their complaint, where they allege that "plaintiffs' warranty deeds created express and implied contractual obligations and warranty covenants between the plaintiffs and defendants Central and its officers and directors by virtue of their domination over the financial affairs of DiPasquale and the Cambios." Amended Verified Complaint, ¶ 74. This contention does not create an issue of material fact. Accordingly, summary judgment shall issue in favor of all defendants named in this count.
Count IX — Fraud
In count IX, the plaintiffs claim that the Outside Directors, Central's Officers, and the Cambios committed fraud. The plaintiffs allege to have defrauded when "defendants . . . Nicholas Cambio . . . and Central deliberately concealed material facts regarding the marketability and title" of properties owned by the Cambios and DiPasquale. Amended Verified Complaint, ¶ 80. The Outside Directors and Central's Officers claim that the plaintiffs have failed to show that those defendants made actual representations with the intention of misleading the plaintiffs.See Turner v. Johnson Johnson, 809 F.2d 90, 95 (1st Cir. 1986). As these defendants accurately point out, the only person who did make actual representations to the plaintiffs was DiPasquale. Summary judgment shall enter in favor of the Outside Directors and Central's Officers on this count.
The Cambios also move for summary judgment on this count, alleging that the plaintiffs have failed to show reasonable reliance or causation, two elements necessary to recovery on a misrepresentation theory. Specifically, the Cambios contend that the cause of the plaintiffs' loss was the failure of DiPasquale to make payments on the loan, not the Harritos' reliance on alleged misrepresentations. The plaintiffs offer nothing in opposition to this contention. They have failed to allege that they were induced to act by any alleged misrepresentation. SeeSt. Paul Fire and Marine Insurance Co. v. Russo Brothers, Inc.,641 A.2d 1297, 1300 (R.I. 1994) (summary judgment proper where no allegation that misrepresentation induced party to execute agreement). As a result, summary judgment shall issue in favor of the Cambios on this count.
Counts XIV and XV — Fraudulent Transfer
In these counts, the plaintiffs seek recovery for violation of the Uniform Fraudulent Transfer Act, G.L. 1956 (1992 Reenactment) § 6-16-1 et. seq. None of the parties, including the plaintiffs, specifically discusses these claims in motions or memoranda. The court finds these claims to be completely lacking in merit and grants summary judgment in favor of the Outside Directors and Central's Officers.
Count XVI — Declaratory Judgment
The plaintiffs request a declaratory judgment declaring all property deeds, promissory notes, and mortgage agreements null and void. This count states no new theory of liability but rather relies entirely upon the merits of the plaintiffs' other claims. As each of those claims is without merit, count XVI must fail as well.
Count XVII — Interference with Contractual Relations
The plaintiffs allege that the Outside Directors, Central's Officers and the Cambios unlawfully interfered with express and implied contracts that existed between Central and the plaintiffs. The elements of this tort are (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of that contract; (3) intentional interference; (4) proof that interference caused the harm sustained; and (5) damage resulting therefrom. DiBiasiov. Brown and Sharp Manufacturing Co., 525 A.2d 489, 493 (R.I. 1987); Mesolella v. City of Providence, 508 A.2d 661, 669 (R.I. 1986).
The plaintiffs have failed to meet the threshold showing necessary to recover under this theory. As the defendants accurately point out, the plaintiffs have failed to produce any evidence showing interference on the part of the defendants. Moreover, even assuming arguendo that such interference occurred, the plaintiffs have failed to show a causal connection between it and the plaintiffs' claimed damages. Summary judgment shall issue in favor of the defendants on this count.
Count XVIII — Criminal Theft
In count XVIII, the plaintiffs seek recovery against the Outside Directors, Central's Officers and the Cambios based on alleged violations of G.L. 1956 (1994 Reenactment) §§ 11-41-1,11-41-3, and 11-41-4. In alleging a private right of action under state criminal statutes, the plaintiffs have simply restated their RICO and conversion claims. As was the case with those claims, no issue of material fact exists here and the defendants are entitled to summary judgment.
Count XIX — Outrage
The plaintiffs claim that the Outside Directors, Central's Officers, and the Cambios committed the tort of outrage. This tort is more properly referred to as intentional infliction of emotional distress. Rhode Island has recognized a cause of action based on the language of Restatement (Second) of Torts, § 46 (1965). See Champlin v. Washington Trust Co., 478 A.2d 985, 988 (R.I. 1984). In order to recover under Champlin, the plaintiffs must show that the defendants' conduct was (1) intentional or in reckless disregard of the probability of causing emotional distress; (2) extreme and outrageous; and (3) a proximate cause of the emotional distress. Id. at 989. In addition, the plaintiffs must show that the emotional distress was "severe."Id. The severity requirement has been interpreted to require that the emotional trauma have some physical manifestation. See Reillyv. United States, 547 A.2d 894, 898-99 (R.I. 1988).
The plaintiffs' claims fall short again, failing to allege conduct on the part of any defendant intended to cause emotional distress. Moreover, the plaintiffs completely ignore the physical manifestation requirement. Summary judgment shall issue in favor of the defendants.
Count XX — Conversion
Count XX seeks recovery for conversion of the plaintiffs' house by the Outside Directors and Central's Officers. The tort of conversion encompasses "any conduct which deprives another of his property permanently or for an indefinite time or any exercise of dominion over the chattel which is inconsistent with the owner's property in it." Goodbody Co. Inc. v. Parente,116 R.I. 437, 440, 358 A.2d 32, 33-34 (1976). The plaintiffs claim that the Outside Directors and Central's Officers committed this tort by "wrongfully tak[ing] and convert[ing] title to the plaintiffs' home without right or justification." Amended Verified Complaint, ¶ 123.
This contention is utterly lacking in merit. Both plaintiffs were aware of the risk of losing their home. When payment was not rendered, the bank was legally justified in foreclosing on the property. Summary judgment shall issue in favor of the defendants on this count.
With respect to all of the above, counsel shall submit the appropriate order for entry.
[1] Defendants John Montecalvo and the estate of Salvatore Mancini also filed a motion for summary judgment, relying on the memoranda filed by this first group of defendants.
[2] The Harritos agreed that upon payment of the loans, these parcels would be conveyed back to Cambio.
[3] The amended complaint also contained twenty counts.
[4] Defendants John Montecalvo and the estate of Salvatore Mancini are included in this group.
[5] The Cambios are not alleged to have owed any such duty to the plaintiffs.
[6] Again, the Cambios are not named as defendants on this count.
[7] The Cambios are not named in this count.